CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
M. Bo Griffith (Bar No. 315358)
(E-Mail: bo_griffith@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
Brayan Ramos-Brito

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BRAYAN RAMOS-BRITO.<br><br>Defendant. | Case No. 2:25-CR-00501-SVW<br><br>**DEFENDANT'S OPPOSITION TO GOVERNMENT'S MOTION *IN LIMINE* TO PRECLUDE SELF-DEFENSE; EXHIBITS 1-6**<br><br>Hearing Date: Sept. 15, 2025<br>Hearing Time: 11:00 a.m.<br>Location: Courtroom of the Hon. Stephen V. Wilson |

Defendant Brayan Ramos-Brito, through his counsel of record, M. Bo Griffith and Cuauhtemoc Ortega, hereby files his opposition to the government's Motion *in Limine* to Preclude Self-Defense (Dkt. 84).

I. INTRODUCTION

The government claims that defendant Brayan Ramos-Brito "struck Agent J.M.'s chest" during a protest (Dkt. 84 at 3), and, for that reason, has charged him with assaulting a federal officer. There is no evidence of a strike to J.M.'s chest, however. No video depicts it. The evidence at trial will show that J.M.'s story is untrue, and that, contrary to his account, it was J.M. and his fellow U.S. Border Patrol (USBP) agents who acted as the aggressors and assaulted Mr. Ramos-Brito.

The video evidence at trial will plainly show that J.M. violently pushed Mr. Ramos-Brito for no justifiable reason. Afterward, Mr. Ramos-Brito was savagely assaulted and dragged across the concrete, leaving his clothing tattered and his body injured in multiple places, including his face, arms, ribs, hands, and legs. (Exhibits 1-6.)




*Exhibit 1*                                   *Exhibit 2*

The government attempts to downplay J.M.'s actions by essentially describing him as a traffic controller helping ferry trucks into a Department of Homeland Security facility. But a juror, after reviewing the video evidence, could comfortably conclude from observing J.M.'s aggressive demeanor and the brute force of his shove that he used unlawful force for reasons completely unrelated to traffic, including that he simply

abused his power because he was able to, or that he was annoyed by Mr. Ramos-Brito's and the protestors' presence and expression, and acted on that anger. The evidence will show USBP agents described Mr. Ramos-Brito as a "street thug," even though Mr. Ramos-Brito is a law-abiding citizen with no criminal history. The use of the pejorative "street thug" corroborates that USBP agents felt animus toward Mr. Ramos-Brito, even though they had no personal familiarity with his background and were making assumptions based on his appearance.

The fact that Mr. Ramos-Brito used profane language to express his feelings about USBP, and that he was in close proximity to them, is not illegal. Mr. Ramos-Brito can say whatever he wants in public; this does not give USBP license to beat him.

Mr. Ramos-Brito did not strike J.M. in the chest, and that fact alone is dispositive in this case. The defense, however, reserves the right to additionally argue that any contact Mr. Ramos-Brito had with J.M. or any agent as a result of their unlawful use of force was in self-defense.

## II. APPLICABLE LAW

The elements for self-defense relating to a federal official are set forth in the Model Ninth Circuit Jury Instructions, 8.3 Assault on Federal Officer or Employee—Defenses are: (1) the defendant did not know that the victim was a federal officer or employee; (2) the defendant reasonably believed that use of force was necessary to defend oneself against an immediate use of unlawful force; and (3) the defendant used no more force than appeared reasonably necessary in the circumstances. See Ninth Circuit Model Criminal Jury Instructions, No. 8.3 (2022 ed.).

However, the Ninth Circuit expressly allows for modification of the instruction based on the facts of each case. The commentary to the jury instruction states:

> In *United States v. Span*, 970 F.2d 573 (9th Cir. 1992), the Ninth Circuit upheld this instruction. The court cautioned, however, that "the model instruction would be inappropriate in

>  a case where a defendant's theory of the case is self-defense against the use of *excessive* force by a federal law enforcement officer." *Id.* at 577 (emphasis in original). In such a case, the instruction *must be modified appropriately*.

*Id.*, Commentary (latter emphasis added). The *Span* court explained that giving Instruction 8.3 where there is a claim of excessive force, as is the case here, would be inappropriate because the instruction's language "allows the government to defeat an excessive force theory of defense merely by proof beyond a reasonable doubt that the defendant knew that the person that [he] allegedly assaulted was a federal law enforcement officer." 970 F.2d at 577. The court found it troubling that a jury could not acquit a defendant, even if it believed unlawful excessive force was used and the defendant reasonably defended himself, simply because the government could establish that defendant knew the aggressor was law enforcement. *Id.*

The defense erred in submitting Model Jury Instruction 8.3 for the Court's consideration in the parties' Joint Jury Instructions in light of this authority. It respectfully requests that the Court instead give Model Jury Instruction 5.10—Self-Defense, as adjusted below to reflect the facts of this case:

> **5.10 Self–Defense**
>
> The defendant has offered evidence of having acted in self-defense. Use of force is justified when a person reasonably believes that it is necessary for the defense of oneself or another against the immediate use of unlawful force. However, a person must use no more force than appears reasonably necessary under the circumstances.
>
> ~~Force likely to cause death or great bodily harm is justified in self-defense only if a person reasonably believes that such force is necessary to prevent death or great bodily harm.~~

4

> The government must prove beyond a reasonable doubt, with all of you agreeing, that the defendant did not act in reasonable self-defense.

This instruction is appropriately tailored to the facts of this case and should be read to the jury for the reasons stated in this motion. *See United States v. Ornelas*, 906 F.3d 1138, 1147-48 (9th Cir. 2018) (citing *Span* approvingly, and observing that provision of general self-defense instruction resolved the *Span* conflict discussed above).

A defendant is entitled to a self-defense instruction when "there is any foundation in the evidence, even though the evidence may be weak, insufficient, inconsistent or of doubtful credibility." *United States v. Sanchez-Lima*, 161 F.3d 545, 549 (9th Cir. 1998) (quotation marks and citation omitted).

### III.  ARGUMENT

Mr. Ramos-Brito comfortably satisfies the low standard set by *Sanchez-Lima*, and the Court should permit him to present a self-defense claim and to have the jury instructed on self-defense law. It does not matter that the government contests the evidence of self-defense, it is only sufficient to have "any foundation," even if "weak, insufficient, inconsistent or of doubtful credibility." *Id.*

**A.  Mr. Ramos-Brito reasonably believed the use of force was necessary to defend himself or another against the immediate use of unlawful force**

Mr. Ramos-Brito did not strike J.M. in the chest. J.M aggressed against Mr. Ramos-Brito, forcefully shoving him. There was no justification for the degree of force J.M. used; it was unlawful. A juror observing J.M.'s demeanor in the video could easily conclude from the agent's body movement and demeanor that he was acting maliciously with the intent to harm, and that explanations to the contrary are pretextual.

In summary, the foundation Mr. Ramos-Brito offers for this element is:

- There is no video evidence showing Mr. Ramos-Brito striking J.M.'s chest, and, thus, there is no justification for J.M.'s or anyone else's use of force
- On the other hand, there is video evidence of a violent shove by J.M. against Mr. Ramos-Brito
- J.M. appears physically taller and larger than Mr. Ramos-Brito, and was dressed in tactical gear
- Mr. Ramos-Brito was surrounded on all sides by a large number of similarly outfitted USBP agents
- Any responsive action Mr. Ramos-Brito might have taken was a result of being placed in a state of fear and apprehension by J.M.'s excessive force was reasonable given their size/gear disparity, and the fact that Mr. Ramos-Brito was assaulted first
- There is video evidence of USBP agents piling onto Mr. Ramos-Brito after J.M. unlawfully shoves him
- Any responsive action Mr. Ramos-Brito might have taken was a result of being placed in a state of fear and apprehension by the agents piling onto him was reasonable given that they vastly outnumbered him and were inflicting unjustified, unlawful force
- Whether J.M. participated in the continued assault is a contested issue of fact that the jury should resolve
- There is photographic evidence that Mr. Ramos-Brito sustained pronounced injury, from which a jury could infer unjustified, excessive force by J.M. and his colleagues
- Mr. Ramos-Brito's injuries are consistent with intentional assault and beating, not simply an effort to move, restrain, and arrest him. For example, Mr. Ramos-Brito has injuries to his rib cage area and face, consistent with punching or kicking, from which a jury could infer unlawful, excessive force

- A witness will testify that Mr. Ramos-Brito was placed in a choke hold
- Video of the gratuitous dragging of Mr. Ramos-Brito across the concrete, which caused him additional injury, could reasonably lead a jury to conclude that the USBP agents were using unlawful force from first contact
- For the foregoing reasons, a jury could conclude that any actions Mr. Ramos-Brito took to defend himself or others from the USBP agents' aggression were reasonable responses to the immediate use of unlawful force

This element of self-defense is satisfied and should go to the jury.

### B. Mr. Ramos-Brito used no more force than reasonably necessary under the circumstances

This element is also satisfied. The foundation Mr. Ramos-Brito offers is:

- Mr. Ramos-Brito did not strike J.M.
- Any force he used to defend himself against J.M. was reasonable since J.M. was the aggressor and had a size and equipment advantage
- Mr. Ramos-Brito was outnumbered by the assaulting agents; as such, any force he used to defend himself against their attack was reasonably necessary, since he was overpowered
- Because J.M. and the other agents' use of force was excessive and unjustified, any physical action Mr. Ramos-Brito might have taken was reasonably necessary to shield himself from further injury
- The photographs of Mr. Ramos-Brito's injuries speak for themselves; they show he was unable to stop the excessive, unlawful use of force against him, and, thus, any force he used to try to save his bodily integrity was reasonable, even if ineffective against a mob of agents

This element of self-defense is also satisfied and should go to the jury.

## IV. CONCLUSION

The defense has far exceeded the minimal showing necessary to present this affirmative defense. Thus, the defense respectfully requests that the Court permit the presentation of a self-defense case, if the defense chooses to present one, and that the Court instruct the jury consistent with the defense's proposed jury instruction. Should the Court grant this motion, the defense will amend the Joint Jury Instructions filing.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: September 11, 2025    By  /s/ *Cuauhtemoc Ortega*
Cuauhtemoc Ortega
M. Bo Griffith
Deputy Federal Public Defender
Attorneys for Brayan Ramos-Brito