CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
M. Bo Griffith (Bar No. 315358)
(E-Mail: bo_griffith@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
Brayan Ramos-Brito

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> BRAYAN RAMOS-BRITO. <br><br> Defendant. | Case No. 2:25-CR-00501-SVW <br><br> **DEFENDANT'S MOTION *IN LIMINE* FOR ATTORNEY-LED VOIR DIRE** <br> Hearing Date: September 16, 2025 <br> Hearing Time: 11:00am |

Defendant, Brayan Ramos-Brito, by and through his counsel of record, M. Bo Griffith and Cuauhtemoc Ortega, hereby files its motion *in limine* requesting attorney-led voir dire after the Court's examination of prospective jurors. Mr. Ramos-Brito requests that each party be given at least 30 minutes to conduct their examination of the prospective jurors.

## I.   FACTUAL BACKGROUND

One June 7, 2025 Mr. Ramos-Brito attended a protest of Immigration and Customs Enforcement ("ICE") in Paramount, CA. During the protest, Mr. Ramos-Brito was forcibly shoved by an ICE agent, thrown to ground, piled on by mob of ICE agents, and placed in a chokehold. He was thereafter dragged across the pavement and placed under arrest. The government claims that Mr. Ramos-Brito "intentionally and forcibly assaulted, resisted, impeded, intimidated, and interfered with victim J.M., an employee of the United States Border Patrol." Dkt. 64.

Government officials, including the prosecutors' office, immediately took to the media to construct a narrative beneficial to the government, in the same venue in which Mr. Ramos-Brito will now be tried. On June 10, 2025, ICE's official government Instagram account posted a video that depicts Mr. Ramos-Brito, and defense witness Jose Manuel Mojica, being arrest and carried away by ICE agents while Border Patrol Chief Gregory Bovino states "we've got a mission… that mission is called arrest bad people doing bad things. So we're going to do this aggressive posture legally ethically, and morally, does everybody get me on that?" Ex. 2. *See* Dkt. 78, 80. As of September 10, 2025, the post had 7,207 "likes" and 616 comments. Ex. 1.  On June 7, 2025, Acting U.S. Attorney Bilal Essayli, appeared on CBS News Los Angeles to falsely claim to residents of this district who will make up the jury pool that the protesters were "agitators who are highly organized, highly coordinated, they are coming out and they are impeding our investigation." Ex. 2. On June 10, 2025, Homeland Security Investigations (HSI) posted an image of defense witness Mojica to X/Twitter, claiming he would be charged with federal obstruction. Ex. 3. As recently as August 14, 2025, Essayli appeared on *Fox News @ Night with Trace Gallagher*, in a clip that was later posted to social media. Gallagher opines in the clip that "these protesters come to the scene supporting a child abuser." Ex. 4. Essayli responded in agreement with a claim that protesters are "emboldening criminal illegal immigrants to resist ICE." Ex. 4. Essayli did so knowing his statements would permeate throughout the district, just as

1  his prosecutors were attempting to charge the defendants he was maligning.

2       To be fair, other national news agencies like the Los Angeles Times and the New York Times have covered the events surrounding this case independent of the government's media blitz. Ex. 5, 6. The Guardian published two different articles profiling defense witness Mojica. Ex. 7. One includes a video that will be introduced at trial by either the government or the defense. Ex. 7 at 8, 19.

## II.   APPLICABLE LAW

Fed. R. Crim. P. 24(a) states that the Court may examine prospective jurors itself, may permit counsel for the parties to do so, or may allow for both Court- and counsel-conducted voir dire. If a court conducts the entire examination itself, it must permit counsel for the parties to "ask further questions that the court considers proper" or "submit further questions that the court may ask if it considers them proper." *Id*. This process is necessary to help ensure a fair and impartial jury of Mr. Ramos-Brito's peers – or as close as possible to such a standard – is selected for trial.

A fair and impartial jury is the bedrock of the American legal system. The Fifth Amendment guarantees that an accused will not be deprived of his liberty without due process of law, and the Sixth Amendment specifies an accused must be provided an impartial jury. U.S. Const. Amend. V-VI. The purpose of the voir dire examination is to allow counsel to make educated use of their challenges to strike prospective jurors who would be inimical to a fair and impartial trial, and to ensure jurors will begin the trial in a neutral position and decide the case based on the evidence before them, rather than preconceived ideas, opinions, or biases. *See Mu'Min v. Virginia*, 500 U.S. 415, 431 (1991).

## III.   ARGUMENT

As the government notes in its own motion in limine, "Immigration enforcement is highly politicized now." Dkt. 85 at 3, ln 16-17. Indeed, government officials, including the Acting United States Attorney and Border Patrol Chief Bovino have taken to social media and cable news to further politicize the immigration protests

at the center of this case. *See* Ex. 1-4. In *United States v. Baldwin*, 607 F.2d 1295, 1296 (9th Cir. 1979), the Ninth Circuit held that the district court committed reversible error in refusing to ask prospective jurors questions regarding the weight they would give to a law enforcement officer's testimony and their acquaintance with any of the prospective witnesses. The media coverage here is directly tied to prospective jurors' trust or distrust of law enforcement, and their familiarity with the potential witnesses. In stark contrast to *Baldwin*, a case about stealing cacti from government-owned land, the government's intentional media campaign here, led by government officials prosecuting this case, has actively sought to establish a narrative that taints the jury pool in this case against ICE protestors, creating a greater need for robust voir dire to ensure Mr. Ramos-Brito's due process rights. The simplest way to do so is to permit attorney-led voir dire.

The national news coverage here, stirred up in part by the prosecutors' office, underscores the need for robust voir dire. "When pretrial publicity is great, the trial judge must exercise correspondingly great care in all aspects of the case relating to publicity which might tend to defeat or impair the rights of an accused. [citation omitted]. The voir dire "must not simply call for the jurors' subjective assessment of their own impartiality, and it must not be so general that it does not adequately probe the possibility of prejudice." [citation omitted]. The district court should conduct a careful, individual examination of each prospective juror, preferably out of the presence of the other jurors. A general question directed to the entire group of prospective jurors is inadequate." *United States v. Giese*, 597 F.2d 1170, 1183 (9th Cir. 1979). Additionally, the amount of social media content that has been created from the protest in general, and this incident in particular, is incalculable. For example, the video at issue in the government's motion *in limine* to exclude post-assault evidence is a video from TikTok, as are others that will be admitted at trial. Dkt. 85, 86. Providing both sides attorney-led voir dire will easily protect Mr. Ramos-Brito's due process rights in a media environment not contemplated in *United States v. Giese*.

While the goal of both court and attorney-led *voir dire* is to ascertain whether any prospective jurors are unable or unwilling to fairly and impartially decide the case, attorney-led *voir dire* can be much more effective at ferreting out biases, particularly when used in conjunction with questioning by the Court. Many jurors answer questions differently depending on whether the inquirer is a federal judge or a lawyer for the parties. Jurors refrain from disclosing certain feelings – especially those deemed negative or unpopular – to judges, because judges (and federal judges in particular) personify gravitas and authority, and jurors have a conscious or subconscious desire to please them. *See e.g. Suggs and Sales, Juror Self-Disclosure in the Voir Dire: A Social Science Analysis*, 56 Ind. L.J. 245, 255-56 (1981). Many biases that jurors hold are unpopular to admit, and thus questioning by a lawyer for the parties can result in "more self-disclosure from prospective jurors" than questioning by a judge. *Id.*

Other courts have emphasized the importance of attorney-conducted *voir dire*. As the Fifth Circuit stated:

> While Federal Rules of Criminal Procedure 24(a) gives wide discretion to the trial court, voir dire may have little meaning if it is not conducted *at least in part by counsel*. The "federal" practice of almost exclusive voir dire examination by the court does not take into account the fact that it is the parties, rather than the court, who have a full grasp of the nuances and the strength and weaknesses of the case….Experience indicates that in the majority of situations questioning by counsel would be more likely to fulfil this need [for data upon which to intelligently base challenges to potential jurors than an exclusive examination in general terms by the trial court.

*United States v. Ible*, 630 F.2d 389, 395 (1980) (internal citations omitted) (emphasis added).

### IV. CONCLUSION

Mr. Ramos-Brito respectfully requests that the Court permit 30 minutes of attorney-led voir dire for each party, following the Court's own questioning of the prospective

jurors. Such an exercise of the Court's discretion would ensure Mr. Ramos-Brito's due process right to a fair and impartial jury is protected.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: September 11, 2025       By  /s/ M. Bo Griffith
                                M. Bo Griffith
                                Deputy Federal Public Defender
                                Attorney for Brayan Ramos-Brito