CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
M. Bo Griffith (Bar No. 315358)
(E-Mail: bo_griffith@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
Brayan Ramos-Brito

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BRAYAN RAMOS-BRITO.<br><br>Defendant. | Case No. 2:25-CR-00501-SVW<br><br>**DEFENDANT'S MOTION *IN LIMINE* TO COMPEL USE IMMUNITY FOR JOSE MOJICA; EXHIBITS 1-4**<br><br>Hearing Date: Sept. 15, 2025<br>Hearing Time: 11:00 a.m.<br>Before the Hon. Stephen V. Wilson |

Defendant, Brayan Ramos-Brito, by and through his counsel of record, M. Bo Griffith and Cuauhtemoc Ortega, hereby files this motion *in limine* to compel use immunity for defense witness and formerly charged defendant Jose Mojica. Mr. Mojica is under defense subpoena and represented by counsel, Meghan Blanco, who will receive service of this motion *in limine*.

## I. FACTUAL BACKGROUND

On June 7, 2025, Brayan Ramos-Brito attended a protest against immigration sweeps and activity in Paramount, CA. During the protest, Mr. Ramos-Brito was forcibly shoved by J.M., a United States Border Patrol (USBP) agent, thrown to the ground, piled on by a mob of other USBP agents, and placed in a chokehold. He was thereafter dragged across the pavement and placed under arrest. After arresting him, the government filed charges claiming Mr. Ramos-Brito "intentionally and forcibly assaulted, resisted, impeded, intimidated, and interfered with victim J.M." Dkt. 64. Jose Mojica, who was an eyewitness to these events, would testify in direct contradiction to J.M.'s claims. He would say that at no point during this altercation did Mr. Ramos-Brito push or shove J.M.

The defense served Mr. Mojica with a subpoena, after which he, through counsel, expressed fear about testifying; he expressed an intention to invoke his Fifth Amendment right against self-incrimination. Unfortunately, Mr. Mojica's fear of reprisal by the United States Attorney's Office (USAO) is well founded. He was initially charged along with Mr. Ramos-Brito, and though his charges have now been dismissed, the dismissal was without prejudice, meaning the government could simply refile its case any time it chooses.

During the pendency of his case, the USAO publicly and inappropriately attacked Mr. Mojica in the media, in complete disregard of his presumption of innocence, and seemingly for political gain. As described further herein, the USAO's history of hostility toward Mr. Mojica is now distorting the fact-finding process. Because of the USAO's actions, Mr. Ramos-Brito cannot now call an exculpatory eyewitness to rebut J.M.'s false claims or the self-serving claims J.M.'s colleagues are expected to make at trial in an effort to corroborate his story. Mr. Ramos-Brito faces denial of due process and a fair trial entirely due to the USAO's choices.

The USAO, however, refuses to provide use immunity to Mr. Mojica. Thus, the defense requests that the Court compel the USAO to furnish use immunity.

## II. APPLICABLE LAW

Use immunity prohibits the government from using a witness's testimony to prosecute that witness for any crime except perjury, giving a false statement, or otherwise failing to comply with an order granting such immunity. *See* 18 U.S.C. § 6002; *United States v. Lord*, 711 F.2d 887, 890 (9th Cir. 1983) ("Use immunity means that, while the government may prosecute the witness for an offense related to the subject matter of the witness's testimony, the testimony itself and any "fruits" thereof may not be used against the witness in any criminal case except a prosecution for perjury arising out of the testimony.") (*citing New Jersey v. Portash*, 440 U.S. 450, 451-52 (1979)).

Generally, an order granting use immunity for a witness's testimony must be sought by the government. *See* 18 U.S.C. §§ 6002, 6003; *United States v. Westerdahl*, 945 F.2d 1083, 1086 (9th Cir. 1991) ("A criminal defendant is not entitled to compel the government to grant immunity to a witness."). However, where the government's failure to seek an immunity order would result in a violation of the defendant's Fifth Amendment right to a fair trial, the court may compel the government to request one. *See United States v. Straub*, 538 F.3d 1147, 1156 (9th Cir. 2008). In the Ninth Circuit, to prove that a violation of due process would occur in the absence of such an order,

> a defendant must show that: (1) the defense witness's testimony was relevant; and (2) either (a) the prosecution intentionally caused the defense witness to invoke the Fifth Amendment right against self-incrimination with the purpose of distorting the fact-finding process; or (b) the prosecution granted immunity to a government witness in order to obtain that witness's testimony, but denied immunity to a defense witness whose testimony would have directly contradicted that of the government witness, with the effect of so distorting the

3

>fact-finding process that the defendant was denied his due process right to a fundamentally fair trial.

*Id*. at 1162. The relevance requirement is "minimal." *Id.* at 1157. Some "proof regarding the anticipated content of [the witness's] proposed testimony" is required. *United States v. Reagan*, No. 08-10068, 2009 WL 1185666, at *1 (9th Cir. May 4, 2009). But "[t]he defendant 'need not show that the testimony sought was either clearly exculpatory or essential to the defense.'" *Id.* (explaining that the proffered testimony could be relevant, because it "raise[s] credibility questions about a key prosecution witness") (citing *United States v. Westerdahl*, 945 F.2d 1083, 1086 (9th Cir. 1991)).

To satisfy prong 2(a) of the *Straub* test, "the government's actions need to amount to something akin to prosecutorial misconduct." *Straub*, 538 F.3d at 1157.

>Undue prosecutorial interference in a defense witness's decision to testify arises when the prosecution intimidates or harasses the witness to discourage the witness from testifying, for example, by threatening the witness with prosecution for perjury or other offenses. The prosecution's conduct must amount to a substantial interference with the defense witness's free and unhampered determination to testify before the conduct violates the defendant's right to due process.

*See Williams v. Woodford*, 384 F.3d 567, 601–02 (9th Cir. 2004) (cited in *Straub*).

Mr. Ramos-Brito does not seek use immunity under *Straub*'s 2(b) prong, as he is unaware whether any prosecution witnesses have been granted immunity.

### III.  ARGUMENT

#### A.  Relevance

The relevance of Mr. Mojica's testimony cannot be reasonably debated. If granted immunity, his testimony would establish that he was within immediate proximity of J.M. and Mr. Ramos-Brito; that he was an eyewitness to the events of this case; and, that Mr. Ramos-Brito did not push, shove or punch J.M., as J.M. now claims.

Mr. Mojica's testimony would directly contradict J.M.'s own testimony and the self-serving testimony of other USBP agents called to corroborate his account. Mr. Mojica does not know Mr. Ramos-Brito; he has no incentive to invent testimony or lie on his behalf. His testimony is crucial for Mr. Ramos-Brito to receive a fair trial and due process. This *Straub* factor strongly favors Mr. Ramos-Brito's motion.

### B.    Distortion of Fact-Finding Process

Shortly after Mr. Ramos-Brito's and Mr. Mojica's arrest, the USAO and government agents involved with the prosecution of this case, immediately took to the media to construct a narrative beneficial to the government, in complete disregard of the presumption of innocence, and seemingly for political gain:




5

Exs. 1, 2 (depicting Mr. Mojica in X/Twitter posts by Acting United States Attorney Bill Essayli).

On June 10, 2025, three days after Mr. Mojica's arrest, ICE's official government Instagram account posted a video that depicts Mr. Mojica while Border Patrol Chief Gregory Bovino states "we've got a mission… that mission is called arrest bad people doing bad things. So we're going to do this aggressive posture legally ethically, and morally, does everybody get me on that?" *See* Dkt. 88, Exhibit 1 (manually filed).

That same day, Homeland Security Investigations (HSI) posted an image of Mr. Mojica to X/Twitter, claiming he would be charged with federal obstruction:



Ex. 3. In the picture, Mr. Mojica is surrounded by two HSI agents to underscore the government's belief about his guilt during the pretrial phase of this case, and to humiliate and intimidate him.

On June 18, 2025, eleven days after his arrest, the government moved to dismiss the complaint as to Mr. Mojica, *without* prejudice. *See* Case 2:25-mj-03506-DUTY, Dkt. 47. The Court granted the order the next day. *Id.* Dkt. 61.

Stunningly, the USAO's and HSI's social media accounts, and the postings reproduced above *are still publicly available* as of today's date, September 14, 2025. (*See* Declaration of Victor Gomez, attached hereto as Ex. 4). Thus, even though Mr. Mojica's case is presumably dismissed, the USAO actively continues to broadcast to the public that they believe Mr. Mojica engaged in a crime.

Mr. Mojica is right to be afraid to testify. The USAO has targeted him specifically, going so far as to place his face on social media, and labeling him a threat to law and order. Mr. Mojica's counsel represents to undersigned counsel that her client has received threats as a result of the USAO's publicity campaign. It is not surprising that Mr. Mojica now seeks to invoke his Fifth Amendment rights. The brazen way in which the USAO and its agencies have paraded him in public as a criminal, assuming his guilt before trial, and in disregard of their own policies, amounts to misconduct, by their own definition:

> [Justice] Department employees are generally restricted from publicly releasing any comments or information regarding matters that the Department is involved with that *may reasonably be expected to influence the outcome of that matter, including observations about a defendant's character or their opinion as to a defendant's guilt.*

*See* https://www.justice.gov/jm/jm-1-9000-personal-use-of-social-media (last visited Sept. 14, 2025) (emphasis added).

The actions by the USAO and its agencies have caused an exculpatory eyewitness to become unavailable to Mr. Ramos-Brito. It continues to perpetrate these actions today, less than 48 hours before the start of trial. These actions have unfairly distorted the fact-finding process, affecting Mr. Ramos-Brito's due process rights and his ability to have a fair trial. The Court should find the second prong of *Straub* met.

//

//

## IV. CONCLUSION

According to Mr. Mojica's counsel, he will be asserting his Fifth Amendment right. He is willing to testify if he is granted use immunity. For the foregoing reasons, Mr. Ramos-Brito respectfully requests that the Court compel the government to seek use immunity for Mr. Mojica.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: September 14, 2025     By  */s/ Cuauhtemoc Ortega*
M. Bo Griffith
Deputy Federal Public Defender
Attorney for Brayan Ramos-Brito

8

# PROOF OF SERVICE

I, the undersigned, declare that I am a resident or employed in Los Angeles County, California; that my business address is the Office of the Federal Public Defender, 321 East 2nd Street, Los Angeles, California 90012-4202, Telephone No. (213) 894-2854; that I am over the age of eighteen years; that I am not a party to the action entitled above; that I am employed by the Federal Public Defender for the Central District of California, who is a member of the Bar of the State of California, and at whose direction I served a copy of the attached Defendant's Motion In Limine To Compel Use Immunity For Jose Mojica; Exhibits 1-4 on the following individual(s) by:

| [ ] Placing same in a sealed envelope for collection and interoffice delivery addressed as follows: | [ ] Placing same in an envelope for hand delivery addressed as follows: | [ ] Placing same in a sealed envelope for collection and mailing via the United States Post Office addressed as follows: | [X] E-mail addressed as follows: |

**Meghan Blanco**
**Attorney at Law**
**mblanco@meghanblanco.com**

This proof of service is executed at Los Angeles, California, on September 14, 2025.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

/s/ Diana Miner   .
Diana Miner